IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| EDDIE DEAN WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:05-0003 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on cross-Motions for Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Eddie Dean Williams (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on December 10, 2002 (protective filing date), respectively, alleging disability as of December 9, 2002, due to gastroesophageal reflux disease, back problems, right ulnar problems, status post-heart attack, and depression.[1] (Tr. at 86, 135-37, 173, 469-71.) The claim was denied initially and upon reconsideration. (Tr. at 115-17, 122-23, 473-75, 479-80.) On June 26, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 124.) The hearing

---

[1] On November 3, 2001, Claimant filed a prior application for DIB, which was denied on the basis that he was performing substantial gainful activity. (Tr. at 85, 110-15.) There is no indication in the record that Claimant appealed the decision.

was held on December 15, 2003, before the Honorable John T. Yeary. (Tr. at 508-61.) By decision dated February 20, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 85-96.) The ALJ's decision became the final decision of the Commissioner on November 8, 2004, when the Appeals Council denied Claimant's request for review.[2] (Tr. at 7-10.) On January 4, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the

---

[2] On November 5, 2004, the Appeals Council issued a prior denial of Claimant's request for review. (Tr. at 11-14.) This decision, however, was set aside by the November 8, 2004, decision, for consideration of additional information. (Tr. at 7-10.)

claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently,

3

appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 86.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of status-post coronary artery bypass grafting times four and depressive disorder. (Tr. at 88, 95.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 88.) The ALJ then found that Claimant had a residual functional capacity for sedentary work that includes only occasional climbing, balancing, stooping, crouching, crawling or kneeling and avoids concentrated exposures to extreme heat and cold, humidity, vibration, and industrial pollutants. (Tr. at 93.) The ALJ found that Claimant experiences

mild to moderate pain but can be attentive to and carry out assigned work tasks. (Tr. at 93.) The ALJ further limited Claimant to performing low stress work involving simple, repetitive tasks with limited public, co-worker, and supervisor contact. (Tr. at 93.) As a result, Claimant could not return to his past relevant work. (Tr. at 93.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as a binder, sorter, and pager, which existed in significant numbers in the national economy. (Tr. at 95.) On this basis, benefits were denied. (Tr. at 95-96.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 15, 1961, and was 42 years old at the time of the administrative

hearing. (Tr. at 94, 516.) Claimant has a Generalized Equivalency Diploma. (Tr. at 86, 518.) In the past, he worked as a service manager and a parts manager at an automobile dealership. (Tr. at 86.)

The Medical Record

The Court has carefully considered all of the medical evidence of record and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in determining that Claimant retained the residual functional capacity to perform work existing in the national economy when he rejected the opinion of Claimant's treating psychiatrist, Dr. M. Khalid Hasan and the opinion of Dr. Ramesh C. Shah, M.D. The Commissioner asserts that the ALJ's analysis of these opinions is proper and that the decision is supported by substantial evidence.

Dr. Hasan's Opinion

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2002). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2002). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2002). Ultimately, it is the

responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2)(2002).

Claimant specifically points to Dr. Hasan's June 29, 2003, Mental Residual Functional Capacity Assessment, December 13, 2003, medical report, and December 15, 2003, Assessment to do Work-Related Activities form, which opinions precluded Claimant from sustaining work activity. (Pl.'s Br. at 16.) Dr. Hasan first evaluated Claimant in March, 2002, and treated him from that time through February 25, 2004. (Tr. at 368-82, 466-68, 482-83.) He noted that Claimant experienced work-related stress and would get angry and frustrated. (Tr. at 381.) He further noted that Claimant had difficulty sleeping and remembering, and was weak and tired. (Tr. at 381.) Dr. Hasan diagnosed Claimant with major depression, recurrent, moderate to moderately severe in nature with intermittent explosive behavior, worse under stress; adjustment disorder with anxious and depressed mood

secondary; and a GAF of 55.[4] (Tr. at 382.) Dr. Hasan advised Claimant to lead a normal life and to increase his physical and social activities. (Tr. at 382.) On May 20, 2002, Dr. Hasan noted that Claimant continued to do fair, but noted that his memory was poor due to depression and anxiety. (Tr. at 380.) He advised Claimant to continue working and to stay physically, mentally, and socially active. (Tr. at 380.) From October 28, 2002, through June 23, 2003, Dr. Hasan noted that Claimant continued "to do fair" and that his memory had improved to some extent with medication. (Tr. at 372-76.) In a December 2002, letter, however, Dr. Hasan stated that Claimant "is unable to work presently with the expectation to re-evaluate him in approximately six months to one year." (Tr. at 376.) Dr. Hasan's statement that Claimant was unable to work is an opinion on the ultimate issue of disability, which is reserved to the Commissioner and is thus entitled to little weight. See 20 C.F.R. § 404.1527(e)(1)-(3); 416.927(e)(1)-(3) (2003) (stating that a statement by a medical source that you are "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner, the source of which is not entitled to any special significance).

On June 29, 2003, Dr. Hasan completed a Mental Residual Functional Capacity Assessment form. (Tr. at 368-71.) On the Mental Residual Functional Capacity Assessment, Dr. Hasan found that Claimant was markedly limited in several areas of functioning. (Tr. at 368-69.) He found Claimant markedly limited in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent

---

[4] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (Tr. at 368-69.) Dr. Hasan further noted that Claimant continues to do fair, that his memory is somewhat better, and that medications are helping him "fairly well." (Tr. at 372.)

In a report dated December 13, 2003, Dr. Hasan noted that Claimant scored 30 on the Mini-Mental Status Examination ("MME"), which was a perfect score. (Tr. at 466.) He stated that he believed Claimant's depression played a major role in his poor concentration. (Tr. at 466.) Most importantly, Dr. Hasan reported that Claimant "is not disabled from a purely psychiatric point of view but, as stated by Dr. Shah, the combination might preclude him from working." (Tr. at 466.) However, on December 15, 2003, Dr. Hasan completed an Assessment to do Work-Related Activities in which he opined that Claimant had "no useful ability" to deal with work stresses, maintain attention and concentration, and understand, remember, and carry out complex job instructions. (Tr. at 467.) He further opined that Claimant had poor, or seriously limited but not precluded, ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out detailed, but not complex job instructions. (Tr. at 467.) The ALJ found Dr. Hasan's opinion to be inconsistent with his December 13, 2003, statement that he was not psychiatrically disabled and "with his longitudinal treatment notes" which demonstrated that Claimant was "doing fair." (Tr. at 92.) The ALJ noted that on May 18, 2003, Claimant reported "vast improvement with decreased work since quitting work in December 2002." (Tr. at 92, 373.) Additionally, the evidence submitted to the Appeals Council does not contradict the ALJ's findings. (Tr. at 482-83, 494-507.) Dr. Hasan noted that Claimant continued to do fair and that his depression and anxiety were under much better

control than before. (Tr. at 482.) However, Dr. Hasan stated that although Claimant achieved a normal score on the MME, he nevertheless continued to have poor concentration, which was attributable to his depression. (Tr. at 483, 497, 500.) Nevertheless, on June 16, 2004, Dr. Hasan noted that Claimant's depression and anxiety were under control. (Tr. at 502.) Having found inconsistencies in Dr. Hasan's assessments and his treatment notes, the ALJ was not required to give his opinion controlling weight.

For basically the same reasons, the ALJ gave little weight to the opinion of Dr. Shah, who examined Claimant once on October 27, 2003. (Tr. at 447-50.) Dr. Shah diagnosed Claimant with major depressive disorder in partial remission and assessed him with a GAF of 65.[5] He opined that "[t]he combination of [Claimant's] physical and psychiatric problems would render him totally disabled for gainful employment for 12 months from today and he has been disabled since 12-09-2002." (Tr. at 450.) Dr. Shah's statement that Claimant was totally disabled is an opinion on the ultimate issue of disability, which is reserved to the Commissioner, and is thus entitled to little weight. See 20 C.F.R. § 404.1527(e)(1)-(3); 416.927(e)(1)-(3) (2003) (stating that a statement by a medical source that you are "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner, the source of which is not entitled to any special significance). Furthermore, as the Commissioner notes, Dr. Shah's opinion was based, in part, on Claimant's physical complaints which is beyond the specific area of Dr. Shah's expertise. Thus, as with Dr. Hasan, the ALJ was not required to afford Dr. Shah's opinion controlling weight.

Furthermore, as the Commissioner emphasizes, the ALJ's decision is supported by a State

---

[5] A GAF of 65 indicates that the person has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, having some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

agency psychologist, LaRee DeVee Naviaux, who opined that Claimant had the mental residual functional capacity to "do simple 1-2 step tasks in [a] work setting." (Tr. at 351.)

To the extent that Claimant challenges the ALJ's physical functional capacity assessment to perform a limited range of sedentary work, the undersigned finds his claim unavailing. Although Claimant underwent coronary artery bypass grafting surgery on August 22, 2003, his treating physician, Dr. Jebran Karam, M.D., reported in September 2003, that Claimant was improving and doing fairly well. (Tr. at 442-43.) On September 17 and 22, 2003, Claimant denied having any chest pains and was gradually increasing his activity level. (Tr. at 443-44.) At the hearing, Claimant testified that although he experiences some chest pains, the pains are mostly due to the surgery and that he had not needed to take nitroglycerin. (Tr. at 524-25.) The ALJ found that Claimant had the physical residual functional capacity to perform sedentary work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. at 93.) The ALJ's decision is further supported by Claimant's reported activities. At the hearing, Claimant testified that he had sole custody of his nine year old daughter and that he primarily handled the housework, including vacuuming, making the beds, doing laundry, taking out the garbage, cooking, cleaning the dishes by hand, cleaning the bathroom and kitchen, and grocery shopping. (Tr. at 518, 531-35.) He further testified that he watches television, follows football, and reads the Bible and sports magazines. (Tr. at 538.) The ALJ noted that there were some inconsistencies in the record as to whether Claimant continues to pursue his woodworking hobby. (Tr. at 92.) The Court agrees with the Commissioner that the medical evidence and Claimant's own statements support the ALJ's RFC assessment. The ALJ properly evaluated and considered all the evidence of record in making a determination of Claimant's RFC. The Court finds, based upon the record in the instant case, that the ALJ's RFC determination was proper and in accordance with the applicable law and Regulations. The ALJ's finding that Claimant

could perform a limited range of sedentary work is therefore supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Memorandum Opinion to all counsel of record.

ENTER: March 30, 2006.

R. Clarke VanDervort
United States Magistrate Judge